UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case No.  3:11-cr-278-34MCR

THOMAS O'STEEN MONROE
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress (Doc. 28)

filed March 19, 2012.  The Government filed a response in opposition to the Motion on

April 2, 2012 (Doc. 30).  After several continuances, an evidentiary hearing was held

before the undersigned on April 23, 2012.

## I.  Evidence Presented at the Hearing

During the hearing, the Government presented the testimony of three law

enforcement officers:  Officer Michael Kelly from the Putnam County Sheriff's Office and

Troopers Phillip Payne and David Cimino from the Florida Highway Patrol.  Officer Kelly

testified he was assigned to an investigation involving the Defendant.  (Tr. 6:20-24).[2]

On September 8, 2011, Officer Kelly was notified that Defendant would be heading

South and it was believed Defendant would be obtaining some cocaine.  (Tr. 8:11-25,

9:1-2).  He contacted some detectives from the Putnam County Sheriff's Office to

_____

[1]  Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule
6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after
service of this document.  Failure to file timely objections shall bar the party from a de novo
determination by a district judge and from attacking factual findings on appeal.

[2]  References to the transcript of the evidentiary hearing conducted on April 23, 2012, will
be "(Tr. Page number : line number(s))."

conduct surveillance and they were able to identify Defendant's vehicle. (Tr. 8:12-21). Once the vehicle was identified, Officer Kelly contacted Florida Highway Patrol and spoke with Trooper Cimino. (Tr. 9:3-5). Officer Kelly told Trooper Cimino he would need to develop probable cause to stop Defendant's vehicle. (Tr. 9:9-11).

Shortly after receiving the call from Officer Kelly, one of the troopers ran a search on Defendant's arrest history. (Tr. 15:9-14). Through the search, they learned Defendant had been prosecuted for homicide and was on probation for a drug offense. (Tr. 15:16-18). When the troopers located Defendant's vehicle, Trooper Cimino clocked it going 66 miles per hour in a 55-limit zone. (Tr. 13:17-18). Additionally, the troopers noticed the window tint on the side windows appeared too dark. (Tr. 13:18-19). When Defendant pulled over, Trooper Payne approached the passenger side of the vehicle and asked Defendant for his license, registration, and proof of insurance. Defendant provided his license, but no registration or proof of insurance. (Tr. 16:9-12). Trooper Payne returned to his vehicle to run Defendant's license and then began testing the tint on Defendant's windows. Subsequently, Trooper Payne began writing up the tickets. When he finished writing up the tickets, he asked Defendant to exit the vehicle so that he could issue the tickets away from the road. (Tr. 18:1-9). Defendant exited the car and proceeded toward the rear of the vehicle. Trooper Payne passed by Defendant and noticed a bulge at Defendant's waist. (Tr. 18:18-21). At that point, Trooper Payne believed there was a possibility Defendant could be armed due to the bulge at his waist, Defendant's arrest history, and the fact that he was on probation for a drug offense. (Tr. 19:1-14). Therefore, Trooper Payne conducted a pat-down search of Defendant.

During the pat-down, Trooper Payne noticed an object in Defendant's front pocket, which the officer believed could have been marijuana. (Tr. 19:17-19). Defendant said it was not and offered to show it to Trooper Payne. Trooper Payne declined as he wanted to continue searching for weapons. (Tr. 19:19-21). Trooper Payne then asked Defendant to turn around to face him and the officer lifted Defendant's shirt and saw a plastic baggie with a white powder in it. (Tr. 19:22-25). At that point, a struggle ensued and the officers placed Defendant in handcuffs. (Tr. 20:1-2). After Defendant was subdued, the officers seized two baggies of cocaine from the waistline of Defendant's pants. (Tr. 21:12-18). Defendant was arrested. Later, Trooper Cimino walked his K-9 around the car and the dog alerted to the presence of drugs. The officers conducted a search and recovered an ounce of crack cocaine under the driver's seat. (Tr. 41:4-13).

Defendant now seeks to suppress the seized cocaine and any statements made at the time of his arrest.

## II. Argument

Defendant seeks to suppress evidence seized from his person and car and any statements on the grounds that the traffic stop itself and the subsequent detention and pat-down were unlawful. Specifically, Defendant takes the position that the traffic stop was improper because it was simply a ruse to enable the officers to search Defendant's vehicle. Additionally, Defendant believes he was unlawfully detained during the traffic stop because the officers required him to exit his vehicle rather than simply have him sign the citations from inside his vehicle. Finally, Defendant believes the pat-down performed by the officers was illegal because they did not have any reasonable belief

that he was armed and dangerous.  (Doc. 28).  The Court will address each of these arguments.

**A.  The Initial Stop of Defendant**

Defendant contends the officers conducted an unlawful stop.  Specifically, Defendant argues that the officers used the stop as a ruse to give them a chance to search his vehicle.  Traffic stops are seizures within the meaning of the Fourth Amendment.  <u>Delaware v. Prouse</u>, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979).  As such, the Government must show there was probable cause to stop Defendant's vehicle. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed."  <u>United States v. Bates</u>, 840 F.2d 858, 860 (11th Cir. 1988).  As long as probable cause exists to believe that a traffic violation has occurred, the actual motivation of the police officers is immaterial to the reasonableness of the traffic stop.  <u>United States v. Holloman</u>, 113 F.3d 192, 194 (11th Cir. 1997) (citing <u>Whren v. United States</u>, 517 U.S. 806, 116 S.Ct. 1769 (1996)).

Here, the Troopers testified Plaintiff was speeding and the tint on Defendant's car windows appeared too dark.  Defendant does not question whether there was probable cause for the traffic stop.  Instead, he takes the position that the officers had the intent to stop him for some sort of violation so they could find a way to conduct a search of his vehicle.  However, as noted above, because there was probable cause for the stop, the actual motivation of the police officers is immaterial to the reasonableness of the traffic

stop.  Holloman, 113 F.3d at 194.  Accordingly, the undersigned finds no violation of Plaintiff's Constitutional rights in the initial stop of Defendant.

**B.  Whether the Officers Exceeded the Scope of the Stop**

Defendant argues the officers violated the Fourth Amendment when they required him to exit his vehicle in order to sign the citation.  Defendant argues law enforcement may only detain an individual for the amount of time it takes to issue the citation and requiring him to exit the car was unnecessary and exceeded the scope of the stop.  Defendant is correct that "[o]nce a legitimate traffic stop is made, it must last no longer than is necessary to effectuate the purpose of the stop."  United States v. Baptiste, 388 F.App'x. 876, 881 (11th Cir. 2010) (citing United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999)).

Defendant's main concern does not appear to be with the length of time it took to issue the citation, but rather with the fact that Defendant was required to exit the vehicle in order to sign the citation.  Indeed, during the evidentiary hearing, counsel for Defendant stated:

> And everything was done correctly from a law enforcement standard or perspective right up until the officer had the tickets ready to by signed.  That's when he said in his own mind, "I need to get this guy out of the car."

(Tr. 43: 15-18).  However, the Supreme Court has held that "once a motor vehicle has been lawfully stopped for a traffic violation, a police officer may order the driver to get out of the vehicle without violating the Fourth Amendment."  United States v. Francis, 140 F.App'x. 184, 186 (11th Cir. 2005) (citing Pennsylvania v. Mimms, 434 U.S. 106,

110-11, 98 S.Ct. 330, 333 (1977)).  Accordingly, the fact that Defendant was required to exit the vehicle in order to sign the citation did not violate Defendant's Constitutional rights.

**C.  Whether the Officers had Reasonable Suspicion to Conduct Pat-Down**

Finally, Defendant argues the officers did not have reasonable suspicion to conduct the pat-down.  Defendant takes the position that the officers had no reason to suspect he was armed.  Defendant admits the officers may have suspected he had drugs, however, they did not have reason to believe he was carrying a gun.  As Defendant points out, officers are permitted to make a limited protective search for concealed weapons when an individual gives the officers reason to believe he may be armed and dangerous.  Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923 (1972) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968)).  When determining whether there is reasonable suspicion, a court must look at the totality of the circumstances.  United States v. Blackley, 439 F.App'x. 803, 805 (11th Cir.  2011) (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)).  "The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others is in danger."  Id. (citing United States v. White, 593 F.3d 1199, 1202-03 (11th Cir. 2010)).  Further, reasonable suspicion should be examined by reviewing the collective knowledge of all officers involved in a stop.  Id. (citing United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998); United States v. Cotton, 721 F.2d 350, 352 (11th Cir. 1983)).

-6-

Here, when Trooper Payne asked Defendant to exit his vehicle, the officer observed a bulge in the front of Defendant's pants.  In addition, Trooper Payne was aware that Defendant was suspected to be involved in drug trafficking, had been prosecuted for murder, and was on federal probation for drug charges.  The totality of the circumstances certainly provided Trooper Payne with reasonable suspicion to believe Defendant could be armed and therefore, the pat-down was lawful.

To the extent Defendant argues that lifting up his shirt exceeded the scope of the protective pat-down, the undersigned does not agree.  Indeed, "'Terry does not in terms limit a weapons search to a so-called 'pat-down' search.  Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault [is] permissible.'"  United States v. Reyes, 349 F.3d 219, 225 (5th Cir. 2003) (quoting United States v. Hill, 545 F.2d 1191, 1193 (9th Cir. 1976)).  Therefore, "the raising of a suspect's shirt by a law enforcement officer does not violate the boundaries established in Terry."  Id.  As such, Trooper Payne did not exceed the scope of the pat-down by lifting up Defendant's shirt.

Accordingly, after due consideration, it is

**RECOMMENDED**:

Defendant's Motion to Suppress (Doc. 28) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this __15th__ day of May, 2012.

*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia M. Howard
United States District Judge

Counsel of Record